KING, Justice,
dissenting:
¶ 62. I dissent as to Issue II, whether the trial court erred in denying Myers’s *597 necessity instruction. Because I believe that the trial court should have granted Myers’s instruction on necessity as a defense to his felon in possession of a firearm charge, I would reverse and remand his conviction for that offense.
1163. Myers was charged in a multi-count indictment with several felonies. These included count VI, which charged that:
[Biased upon a series of acts connected together and constituting parts of a common scheme and plan, LYNDON C. MYERS, on or about the 16th day of May, 2012, in the county aforesaid and within the jurisdiction of this Court, did unlawfully, knowingly, and feloniously possess a firearm when LYNDON C. MYERS, the said defendant, had previously been convicted of a felony offense ....
(Emphasis added.)
¶ 64. The State offered proof that Myers’s thumb print was identified on a 9MM pistol found in the bag with money, which had been stolen from Dollar Tree, allegedly by Earnest Johnson, on May 16, 2012. Myers testified that he and his infant son had visited Johnson’s home approximately four or five days prior to the robbery (May 11 or 12, 2012), that he saw the pistol on a table, and that he moved it to prevent injury to his son. That testimony is as follows:
Q. You were here yesterday when the fingerprint man testified?
A. Yes, Sir.
Q. And how he testified that it was your right thumb print—
A. —Yes, sir.
Q. —on the Taurus nine millimeter pistol that was found in the bag along with the robbery money?
A. Yes, sir.
Q. You heard that testimony?
A. Yes, sir.
Q. Did you at any time on the day of the robbery, May 16, 20121[sic], did you at any time on that day handle or touch in any way that firearm?
A. No, sir.
Q. Who did that firearm belong to?
A. Earnest Johnson.
Q. Okay. Have you ever handled that firearm in the past?
A. Yes, sir, I have touched it. You know, the fingerprint guy said he has seen fingerprints last up to years.
Q. Well, tell the jury when you touched the gun the last time?
A. I came to Earnest’s house maybe— it was on a Saturday, me and my son came to the house. I have a three-year-old son. When I came to Earnest’s house, he had the firearm laying on the coffee table. So I grabbed the gun and told him to put it up. I only did it because of the safely of my son. If my son hadn’t been there, I would have never touched it. When I walked in the house, he had the gun laying on the coffee [tjable, on the coffee table in his house. I was really just stopping by for a slight visit because him and his friend-girl had just moved into that apartment, and I wanted to just come through and just show my respects. So I came in. He had the gun sitting on the coffee table. I grabbed the gun and told him to put it up. “Put this up, man.” That’s how my fingerprint got on the gun.
Q. Is that the only time you’ve ever touched it?
A. Yes, sir.
Q. How long prior to May 16th of this year did that happen when you touched the gun?
A. Maybe four to five days before.
Q. Four to five; is that what you said?
*598 A. Yes.
Q. Okay. And who was with you on that occasion when you touched the gun?
A. Me, my son, and Earnest.
Q. And how old is your son?
A. Three years old.
Q. Was the gun loaded?
A. Yes, sir. Well, I have nó idea, Mr. Ritchey. I don’t know if it was or not. I don’t know. Knowing Earnest, it probably was. I don’t know. I just told him to put it up.
Myers was also questioned vigorously about this episode on cross-examination, and not only did his story remain the same, but also he testified that his son was very active.
¶ 65. The State received instruction S-6, which read:
LYNDON C. MYERS has been charged in Count VI of the indictment with the crime of Possession of a Firearm by a Convicted, Felon. If you find from the evidence in this case beyond a reasonable doubt that:
1. LYNDON C. MYERS, on or about the 16th day of May, 2012, in Madison County, Mississippi;
2. Did unlawfully, knowingly and fe-loniously possess a firearm;
3. When, LYNDON C. MYERS, had previously been convicted of a felony offense;
then you shall find the Defendant, LYNDON C. MYERS, guilty of Possession of a Firearm by a Convicted Felon as •charged in Count VI of the Indictment.
If the State has failed to prove any one or more of the above-listed elements beyond a reasonable doubt, then you shall find the Defendant, LYNDON C. MYERS, not guilty of Possession of a Firearm by a Convicted Felon.
(Second emphasis added.)
¶ 66. Myers agreed to the grant of S-6, provided he received D-ll. That is reflected in the following exchange:
THE COURT: What about S-6?
MR. RITCHEY: Your Honor, I don’t have any objection to it provided that we get our requested D-ll. If we don’t, then I think there should be some language about not in necessity. I believe necessity is a defense to the felony possession of a firearm.
THE COURT: Y’all get that? He’s agreeing to the elements as long as he gets D-ll.
MR. GUEST: I know he testified he moved it because of his son, but I don’t know that D-ll is supported by the facts in the case. There has been no reasonable alternative, no adequate alternative, and what the State is alleging, Your Honor, is that he possessed the gun on the day in question, which is according to the elements he possessed it on or about May 16th. The proof was that he touched the gun some days and that’s how his print got on there. So I don’t think D-ll is applicable because he said he didn’t even handle the gun on the date in which he is charged in the indictment.
¶ 67. Myers then asked the trial court to grant instruction D-ll, regarding his defense of necessity to the charge of possession of a firearm by a convicted felon. That proposed instruction read:
The Court instructs the jury that necessity is a valid, legal defense to the crime of possession of a firearm by a convicted felon. In order to be entitled to the defense of necessity, the defendant must prove or establish to your satisfaction each of the following: (1) *599 that his possession of the firearm was done to prevent a significant injury; (2) there was no adequate alternative to his possession of the firearm; and (8) the harm, if any, caused by his possession of the firearm was not disproportionate to the harm avoided.
¶ 68. The trial court denied this instruction during the following exchange: '
THE COURT: D-ll?
MR. MAYFIELD: Our objection is that there is no evidentiary basis for a necessity defense.
THE COURT: Given the fact that the defendant is being prosecuted for possessing the gun on May 16, 2012, not three weeks before.[23]
MR. MAYFIELD: Yes, sir.
MR. RITCHEY: Well, your Honor, I don’t know how you instruct the jury. I mean, I would think there would be a tendency on the part of the jury that if they believe — we’ve admitted he is a convicted felon. And if they believe that ever at any time while he was convicted felon that he handled this weapon, then the prosecution is going to be arguing that’s constructive possession, he is a convicted felon, wham, he’s guilty, when necessity is a valid defense. I don’t know we should be limited to the fact that he didn’t present any testimony he touch it by necessity on the day of the 16th. I don’t think that should prohibit us from getting this necessity defense. He’s entitled to that. It’s a good defense to possession of a firearm by a convicted felon.
THE COURT: Unless he possessed it during the commission of conspiring with another to commit an armed robbery. Isn’t that right?
MR. MAYFIELD: Your Honor, he is not charged with possessing it on the day he touched it or says he touched it.
MR. RITCHEY: I don’t know-that the jury can comprehend that distinction.
MR. MAYFIELD: Counsel has a perfectly good constructive possession instruction with respect to it having been in its — arguably subject to a dominion and control on the 16th of May.
MR. RITCHEY: I think we need some kind of instruction, Judge, that they can’t convict him for being a felon in possession of a firearm unless they find that he possessed the firearm on May 16th.
THE COURT: You’ve got that in the elements instructions.
MR. MAYFIELD: And they have been instructed on constructive possession.
THE COURT: D-ll will be refused.
(Emphases added.) Thus, Myers specifically requested that the jury be instructed that the felon in possession charge was only for possession on May 16, 2012, and the trial court maintained that his request was fulfilled by S-6, despite the fact that S-6 demanded Myers’s conviction for possession on or about May 16, 2012.
¶69. Because instruction S-6 is not restricted to May 16, 2012, the date of the robbery, but instead uses the language “on or about May 16, 2012,” I believe that Myers should have been given his instruction D-ll. The failure to grant D-ll allowed the jury to ignore Myers’ explanation and defense, and convict him for whenever he possessed the pistol.
¶ 70. “[A] trial judge, when requested, must properly instruct the jury on the defendant’s theory of the case — so long as that theory constitutes a legal defense to *600 the charged offense, is not repetitious, and is supported by evidence.”[24] Flowers v. State, 51 So.3d 911, 913-14 (Miss.2010). This is because “a party has a right to have jury instructions on all material issues presented in the pleadings or evidence.” Id. at 912 (internal quotations and alterations omitted). If the question of whether a jury instruction should be granted is close, “the trial court should err on the side of inclusion rather than exclusion.” Id. at 912-13 (internal quotations omitted). Furthermore, the trial court “must consider the evidence in the light most favorable to the accused, and consider all reasonable favorable inferences that may be drawn from the evidence in favor of the accused.” Id. at 913 (internal quotations and alterations omitted).
¶ 71. The necessity defense excuses what would otherwise be criminal conduct when the act was done to prevent a significant evil, no adequate alternative existed, and the harm caused by the act was not disproportionate to the harm avoided by it. Id. In Flowers, the defendant in a house-burglary prosecution testified that he broke into the house because someone was trying to shoot him. Id. at 911-13. The prosecutor chose to cross-examine him about other options, but he insisted that there were none but to break into the house. Id. at 913. “This testimony, if believed, established a prima facie showing of the necessity defense.” Id. Likewise, in this case, Myers testified that a gun that he believed was likely loaded was in the immediate vicinity of, and within the reach of, his very active toddler. He testified that he picked it up and handed it to the owner simply to keep his child from harm. If believed, this testimony established a prima facie showing of the necessity defense. As the Court in Flowers noted,
In a criminal prosecution, trial and appellate judges do not always find the defendant’s testimony believable, credible, or consistent with other evidence. Still, it is evidence. And no citation of authority is necessary for the bedrock legal principle that juries, not judges, determine the weight and credibility of the evidence — including the defendant’s testimony.
And it is the jury’s responsibility, after determining the facts, to apply them to the law provided by the trial court. Yet, had the jurors believed [the defendant’s] testimony, they could not have done so, because the trial judge provided them no instruction on the law of necessity.
Id. The Special Concurrence, without knowing exactly where the child and Myers were in relation to the loaded gun, makes suppositions regarding situations not found in the record as to the “reasonable alternatives” it believes Myers had. Myers testified as to the necessity of keeping a loaded gun away from his “very active” toddler. The trial court should err on the side of inclusion rather than exclusion and the trial court “must consider the evidence in the light most favorable to the accused, and consider all reasonable favorable inferences that may be drawn from the evidence in favor of the accused.” Flowers, 51 So.3d at 913 (emphases added), (internal quotations and alterations omitted). When using this standard, an inference must be made that the toddler, Myers, and Johnson were in physical positions that rendered Myers picking up the gun as the only reasonable alternative. The imaginings of the Special Concurrence *601 that consider the evidence in a light most favorable to the State do not change this standard or render Myers’s testimony irrelevant.
¶ 72. The majority, as did the trial court before it, fails to account for the vague indictment and jury instruction which charge that Myers possessed a firearm “on or about May 16th.” The robbery occurred on May 16. Instead of choosing to state “May 16th” in the indictment and jury instruction, the state chose to charge Myers with felon in possession of a firearm “on or about May 16th” and so instruct the jury. Due to the vague date in the instruction, the jury clearly could have thought that May 12 was “about” May 16 and convicted Myers for his possession of the gun at Johnson’s home. The jury was given no instructions to find otherwise, because the trial court failed to instruct it on the law of necessity. The majority emphasizes that the gun was found in the trunk of the car driven by Myers on May 16. This does not change the fact that no one knows whether the jury actually convicted Myers for this alleged “possession” or whether they convicted him instead for the May 11 or 12 possession of the gun. We have no way of knowing to which possession the conviction applied, due to the vague indictment. Indeed, the majority attempts to explain this away by noting that “Myers offered no testimony as to the necessity of possession of the gun .... in the trunk of the car he was driving shortly after the armed robbery of May 16” Maj. Op. ¶ 17. It also claims that “Myers’s admission that he handled the gun prior to the robbery, even if believed, does not alter the fact that, when he was arrested on May 16, the gun was in his possession.” Maj. Op. ¶ 19. The majority’s argument flies in the face of the extraordinarily plain language of the indictment and the jury instruction. Had it been so extraordinarily clear that Myers was charged with possession of a firearm on and only on May 16, why then, did the trial court refuse to so clearly instruct the jury? The trial court and State instead chose to instruct the jury more ambiguously, allowing them to find him guilty of possession of a firearm on or about May 16. The jury instructions should generally say what they mean and mean what they say. The jury instructions allowed the jury to find Myers guilty of possession of a firearm if he possessed it on one of several dates. The majority now attempts to morph an intentionally vague date in the jury instruction into a specific, singular date. The jury’s determination of when Myers possessed a firearm is simply unknown.
¶ 78. Because Myers’s testimony established a prima facie showing for the necessity defense, and because the jury instruction on the charge of felon in possession of a firearm was so vague as to encompass Myers’s possession of the firearm on May 11 or 12, I believe the trial court erred in not granting Myers’s requested instruction on the necessity defense. For this reason, I would reverse Myers’s felon in possession of a firearm conviction and remand for a new trial on that charge.
DICKINSON, P.J., AND KITCHENS, J., JOIN THIS OPINION.

. Myers specifically testified that he touched the gun four or five days before May 16, 2012. Moreover, the State chose to prosecute Myers not for possession on May 16, 2012, but for possession of the firearm on or about May 16, 2012.

. Interestingly, the majority takes this quote out of context as support for its assertion that necessity does not constitute a legal defense to the charged offense. Maj. Op. ¶ 19. In Flowers, this Court held that it was error for the trial court to refuse a necessity instruction. Flowers, 51 So.3d at 913-14.